UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD ALASKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 25-cv-11032 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| R1 RCM INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richard Alaska accuses Defendant R1 RCM Inc. ("R1")[1] of terminating his employment in retaliation for use of sick leave and because of his age. He has brought charges against R1 under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Illinois Employee Sick Leave Act ("ESLA"), 820 ILCS 191 *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* Before the Court is R1's motion to dismiss Mr. Alaska's amended complaint for failure to state a claim [11]. For the foregoing reasons, the Court grants in part and denies in part R1's motion. Count IV of the amended complaint is dismissed; all other Counts may proceed.

**BACKGROUND**

The following facts are drawn from Mr. Alaska's amended complaint, dkt. 1-1 at *60–79 [hereinafter Am. Compl.],[2] and are presumed true for the purposes of resolving this motion.

---

[1] R1 asserts that the name of the proper Defendant is R1 RCM HOLDCO Inc. Dkt. 11 at *1 n.1. For the purposes of resolving this motion, the Court will accept as true Mr. Alaska's allegation that the name of proper Defendant is R1 RCM Inc.

[2] Dkt. 1-1 is a 100-page exhibit to R1's notice of removal which contains many filings from the Circuit Court of Cook County. Mr. Alaska's amended complaint is located at pages 60 through 79 of the PDF file. For clarity, all future citations to "Am. Compl." will reference paragraph numbers of the amended complaint, while future citations to "dkt. 1-1" will reference the page numbers of the PDF file.

**Factual Allegations**

Plaintiff Richard Alaska was an IT Security Analyst working in cybersecurity for Defendant R1 RCM, Inc. He worked for R1 for seven years, achieving high performance ratings and awards, including the prestigious "Stars Award" in November 2022. Nevertheless, R1 fired Mr. Alaska on March 1, 2024. At the time of his termination, Mr. Alaska was sixty-eight years old.

In June 2023, Mr. Alaska informed his then-manager, Paul Gneco, that he needed to take intermittent leave under the FMLA to care for his son. Although the request for leave was approved, R1 significantly increased Mr. Alaska's responsibilities by assigning him time-consuming tasks (such as managing training compliance for over 30,000 employees) that were previously outside the scope of his role. Despite his increased workload, Mr. Alaska achieved an excellent result of 98% compliance with training requirements, in addition to fulfilling his regular responsibilities. In November 2023, an external rating agency reviewed the work of the cybersecurity team at R1 and gave Mr. Alaska a perfect 5/5 score for documentation, training, and awareness. This was reportedly the first time R1 had received a 5/5 score; in contrast, most cybersecurity practice areas received a score of 3/5.

Despite his excellent work performance, Mr. Alaska reports that he was subjected to discriminatory comments and higher scrutiny than fellow employees who were younger and who had not requested FMLA leave. Shortly after Mr. Alaska made his FMLA request, R1's Chief Information Security Officer, Chris Pineda, asked Mr. Gneco "Why is Richard still here?" In August 2023, a mass email was sent that embarrassed R1. Mr. Pineda warned Mr. Alaska that, if he had sent the email, Mr. Pineda would fire him immediately. It later turned out that a significantly younger colleague sent the email; however, this younger colleague suffered no repercussions. In October and November 2023, Mr. Alaska used his accrued vacation time to take additional leave to care for his son. However, he was repeatedly contacted and directed to perform work, at Mr. Gneco's request, on matters that were not time sensitive or critical. These contacts and work assignments were inconsistent with R1's normal

approach for employees taking leave. Mr. Alaska also reports that Mr. Pineda also discriminated against Raymond Taluy, a sixty-nine-year-old colleague and the only member of the IT Security team who was older than Mr. Alaska. Specifically, Mr. Alaska claims that both he and Mr. Taluy were targeted for removal. After Mr. Taluy was fired, Mr. Pineda referred to him as "boring," and the Vice President of IT Security referred to him as "useless."

In January 2024, Mr. Alaska attempted to transfer to another department that he thought would be a better fit for him, given his son's illness and his managers' actions in the months following the FMLA request. However, Mr. Gneco informed Mr. Alaska that he could not transfer to another department because a Performance Improvement Plan ("PIP") had been entered for him (despite the perfect score he had received from the external ratings agency just two months prior). In addition to preventing his transfer, this PIP also made Ms. Alaska ineligible for his annual bonus. The PIP imposed a requirement that over 1500 employees engage with R1's IT Security Portal each month. Mr. Alaska characterizes this requirement as "unreasonable and unrealistic," given "internal data showing far lower engagement levels across all comparable departments" and given that R1 provided no tools or resources to help Mr. Alaska achieve this requirement. Am. Compl. ¶ 27. Mr. Alaska alleges that the PIP was pretextual and designed to force him out of the company.

On February 14, 2024, Mr. Alaska's attorney submitted to R1 a complaint of age discrimination and FMLA retaliation. R1 did not investigate this complaint. It fired Mr. Alaska two weeks later, on March 1, 2024.

**Procedural History**

After his termination, Mr. Alaska filed notices of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") on July 2, 2024. Am. Compl. ¶ 107. The EEOC issued a right-to-sue letter to Mr. Alaska on March 6, 2025, and the IDHR issued a right-to-sue letter on June 6, 2025. *Id.* ¶¶ 108–109.

Mr. Alaska filed his initial complaint in the Circuit Court of Cook County on June 4, 2025. Dkt. 1 ¶ 1. He then amended his complaint to reflect the IDHR's right to sue notice, which arrived two days after filing the initial complaint. Dkt. 1-1 at *57–58. Mr. Alaska served R1 with the amended complaint on August 15, 2025, after which R1 timely removed the case to federal court on September 12, 2025. Dkt. 1 ¶ 6. On September 19, 2025, R1 filed the instant motion to dismiss. Dkt. 11. Mr. Alaska and R1 timely filed their respective response and reply briefs, after which this Court took the matter under consideration.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). To survive a motion to dismiss, the plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## DISCUSSION

Mr. Alaska accuses R1 of interfering with the exercise of his rights under the Family Medical Leave Act ("FMLA") and the Illinois Employee Sick Leave Act ("ESLA") (Counts I and III); retaliating against in violation of the FMLA and ESLA (Counts II and IV); discrimination on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA") and the Illinois Human Rights Act ("IHRA") (Counts V and VII); and retaliation in violation of the ADEA and the IHRA (Counts VI and VIII). R1 argues that all Counts are deficient and must be dismissed for failure to state a claim. For the reasons stated below, the Court does not agree that all Counts are deficient.

**I.         Leave Interference Claims**

        *A.         Interference under the Family Medical Leave Act (Count I)*

The Family Medical Leave Act protects the right of qualifying employees to "take reasonable leave for… the care of a child… who has a serious health condition[.]" 29 U.S.C. 2601(b). The FMLA also states that "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To state a claim for FMLA interference under § 2615(a)(1), Mr. Alaska must show (1) he was eligible for FMLA protections; (2) R1 was covered by the FMLA; (3) Mr. Alaska was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) R1 interfered with, restrained, or denied FMLA benefits to which Mr. Alaska was entitled. *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022) (citing *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015)). Additionally, to recover for a violation of the statute, Mr. Alaska must show that R1's alleged FMLA interference prejudiced him. *Id.* (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). R1 does not contest that Mr. Alaska has satisfied the first four elements. Dkt. 12 at *6 [hereinafter Def. Br.]; *see* Am. Compl. ¶¶ 36–38.

In its initial brief, R1 argues that Mr. Alaska's FMLA interference claim is foreclosed by the fact that R1 granted Mr. Alaska's requested FMLA leave. Def. Br. *6 (citing *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011)). However, Mr. Alaska correctly responds that, in *Ziccarelli*, the Seventh Circuit explicitly held that "actual denial is not required" to find a violation of § 2615(a)(1). Dkt. 15 at *3 [hereinafter P. Resp.] (citing 35 F.4th at 1087). Instead, the question is whether R1 *interfered* with Mr. Alaska's exercise of his FMLA rights. *Id.* at 1088–89. Such interference, at a minimum, "encompasses 'us[ing] the taking of FMLA leave as a negative factor in employment actions' and 'discouraging an employee from using such leave.'" *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015) (quoting 29 C.F.R. § 825.220(c), (b)).

In its reply brief, R1 seems to acknowledge that *Ziccarelli* defeats its initial argument. Dkt. 18 at *3 [hereinafter Def. Reply]. R1 instead pivots to arguing that Mr. Alaska "ignores… the critical fifth element enunciated in [*Ziccarelli*], which requires plaintiffs to plead facts that demonstrate that they were prejudiced by the alleged interference." *Id.* But there are some major problems here. First is that R1 has, again, misconstrued Seventh Circuit precedent. Prejudice is *not* the fifth element required to show a violation of § 2615(a)(1); rather, it is an additional requirement that establishes whether a plaintiff is entitled to relief. *Ziccarelli*, 35 F.4th at 1089 ("[T]his prejudice question is used to decide whether § 2617 provides relief for a proven violation. It does not set the threshold for what constitutes a violation of § 2615(a)(1) in the first place." (citing *Ragsdale*, 535 U.S. at 89)). The question of prejudice is unrelated to whether Mr. Alaska has established a *violation* of the FMLA, which is what R1 argued in its motion memorandum. Def. Br. *6–7. The argument that Mr. Alaska has not shown prejudice is therefore a *new* argument, introduced for the first time in R1's reply brief, to which Mr. Alaska did not have an opportunity to respond. The Court therefore refuses to consider this argument in ruling on R1's motion. *Wilson v. Est. of Burge*, 667 F. Supp. 3d 785, 846 (N.D. Ill. 2023) (Valderrama, J.) (citing *Narducci v. Moore*, 572 F.3d 313, 323 (7th Cir. 2009)).

The only remaining question, then, is whether Mr. Alaska's allegations plausibly show interference with his FMLA rights. As the Supreme Court has recognized, assigning an employee to "significantly different work responsibilities" can constitute "a tangible employment action." *Vance v. Ball State Univ.*, 570 U.S. 421, 437 n.9 (2013) (discussing *Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998)). Mr. Alaska claims that, after he requested FMLA leave, R1 "significantly increased" his responsibilities, including assigning him to "time-consuming" work that was "previously outside his role's scope." Am. Compl. ¶ 21. At the motion to dismiss stage, these allegations are sufficient to show that R1 used "the taking of FMLA leave as a negative factor in employment actions" taken against

Mr. Alaska. *Preddie*, 799 F.3d at 818 (quoting 29 C.F.R. § 825.220(b)). The Court therefore finds that Mr. Alaska has adequately pleaded a claim of FMLA interference in Count I.

        B.     *Interference under the Illinois Employee Sick Leave Act (Count II)*

R1 advances similar arguments against Mr. Alaska's allegations of interference with rights protected by the Illinois Employee Sick Leave Act, namely, that Mr. Alaska's claim cannot proceed because he cannot establish that R1 denied him sick leave to care for his son. Def. Br. *7. Mr. Alaska did not respond in any significant depth to this argument, and R1 contends that Mr. Alaska therefore "abandons" his ESLA interference claim. Def. Reply *2–3. The Court agrees that Mr. Alaska's response leaves much to be desired. However, Mr. Alaska does, very briefly, argue that R1's only case citation, to *DiPietro v. GATX Corp.*, 2020 IL App (1st) 192196247, is inapposite to the question of whether he has adequately pleaded a claim for interference with his ESLA rights. Pl. Resp. *4 n.3. On this point, the Court agrees with Mr. Alaska, despite the argument's lack of development. *DiPietro* only examined the ESLA in context of a retaliatory discharge claim. 2020 IL App (1st) 192196 ¶¶ 38–47. That makes it relevant to Mr. Alaska's ESLA *retaliation* claim (Count IV), but its applicability to his ESLA *interference* claim (Count II) is not clearly established, and R1 has not advanced any argument for why it applies in this context.

Additionally, *DiPietro* holds that an employer violates the ESLA if it does not "allow employees to utilize their sick leave to care for family members on the same terms that they are permitted to use the sick leave for their own illness." *Id.* ¶ 43. *DiPietro* also contemplated the possibility that sick leave can be effectively denied if an employer does not permit the employee to take all the hours of sick leave that they have requested and are entitled to. *Id.* ¶ 44. The *DiPietro* plaintiff had not alleged that she had been prevented from using the full amount of time she had requested, so the court did not decide the issue. Here, however, Mr. Alaska *has* plausibly alleged that he was prevented from using the sick leave he requested. Specifically, he alleges that he "was repeatedly contacted and directed to

perform work tasks" during his leave time. Am. Compl. ¶ 25. That establishes a plausible inference that Mr. Alaska was not permitted to use all of his requested time (because he was required to do work during it) and that he was therefore denied the use of sick leave which he requested for the purpose of caring for his son. Additionally, Mr. Alaska states that requiring him to do work during his approved leave "was inconsistent with how R1 usually responds to an employee's use of vacation time." *Id.* For the purposes of a motion to dismiss, that suffices to establish that R1 did not permit Mr. Alaska to use sick leave "on the same terms" that were applied to regular uses of leave. *DiPietro*, 2020 IL App (1st) 192196 ¶ 43.

Thus, even if *DiPietro* is applicable to Mr. Alaska's ESLA interference claim, it tends to support his case, rather than defeat it. The Court therefore finds that Mr. Alaska has adequately pleaded a claim for ESLA interference in Count II.[3]

## II.     Leave Retaliation Claims

### A.     *Retaliation under the Family Medical Leave Act (Count III)*

To state a claim for retaliation under the Family Medical Leave Act, Mr. Alaska "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011) (quoting *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008)). R1 argues that Mr. Alaska has failed to state a claim for FMLA retaliation because he has failed to establish a causal connection. It contends that Mr. Alaska's only alleged adverse employment actions are his placement on a PIP and his termination, which respectively occurred seven and nine months after R1 approved

---

[3] R1 also mentions in passing the possibility that the ESLA may not provide a cause of action for interference. Pl. Br. * 7. It develops a similar argument more thoroughly in the context of Mr. Alaska's ESLA *retaliation* claim (Count IV). *Id.* at *9–10. However, for the purposes of Mr. Alaska's ESLA interference claim, R1 appears to accept *arguendo* that such a cause of action exists. *Id.* at 7. This Court will do the same at this stage of the proceedings.

his FMLA leave, and that these events are too chronologically removed to establish causation. Def. Br. *8–9. R1 cites *Boykin v. Illinois Department of Juvenile Justice* in support of its argument that "[t]emporal proximity on its own is generally not enough to show a causal link." No. 23-CV-4109, 2025 WL 640050, at *11 (N.D. Ill. Feb. 27, 2025) (Seeger, J.) However, that case, in addition to being non-precedential, featured a plausible alternative reason for the plaintiff's discharge; and the same is true of the Seventh Circuit case from which this proposition is ultimately derived. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 509 (7th Cir. 2004). But here, Mr. Alaska's complaint contains no other explanation for his treatment following his return from his FMLA leave, which makes an inference of retaliation significantly more plausible than in those cases.

Additionally, R1 is mistaken in claiming that Mr. Alaska only alleges two adverse employment acts, which occurred several months after his leave was approved. Rather, he alleges that his workload was significantly increased after he requested his FMLA leave, Am. Compl. ¶ 21; that he was threatened with disparate treatment compared to a younger colleague who had not applied for FMLA leave, *id.* ¶ 23; and that R1 repeatedly contacted him and required him to work while taking subsequent non-FMLA leave, *id.* ¶ 25. Additionally, he alleges that he was placed on a PIP despite having very recently been assessed as an excellent performer, *id.* ¶ 16, 26; and that he was terminated just two weeks after his attorney submitted a formal complaint for FMLA retaliation, *id.* ¶ 31; *see* Pl. Resp. ex. A. This alleged series of events establishes a plausible sequence of retaliation for the entire nine-month period from when R1 approved Mr. Alaska's FMLA leave to when it ultimately fired him. At the motion to dismiss stage, where all reasonable inferences are drawn in Mr. Alaska's favor, that is (far) more than enough to support a conclusion that R1 retaliated against Mr. Alaska because he chose to exercise his rights under the FMLA. *See Parreno v. David Sutherland Inc.*, No. 24 CV 13180, 2026 WL 456301, at *8 (N.D. Ill. Feb. 18, 2026) (Alexakis, J.) (denying motion to dismiss where plaintiff

plausibly alleged sequence of retaliation upon return from FMLA leave); *Hansen v. Cent. Mgmt. Servs.*, No. 17-CV-3256, 2018 WL 2944145, at *3 (C.D. Ill. June 12, 2018) (similar).

  *B. Retaliation under the Illinois Employee Sick Leave Act (Count IV)*

  R1 contends that the Illinois Employee Sick Leave Act does not contain a cause of action for retaliation. Def. Br. *9–10. Additionally, to the extent that Mr. Alaska's claim for ESLA retaliation could be construed as an Illinois common law claim for retaliatory discharge, R1 argues that stating such a claim requires a plaintiff to show that the discharge violates a clear mandate of public policy. *Id.* at 10 (citing *Mims v. Boeing Co.*, No. 18-cv-00264, 2022 U.S. Dist. LEXIS 113930, *12-13 (N.D. Ill. June 28, 2022) (Tharp. J.)). The courts of Illinois have made clear that "the [violated] public policy must be clearly mandated and not simply a broad, general statement of policy." *DiPietro*, 2020 IL App (1st) 192196 ¶ 41. Simply pointing to a violated statute is insufficient. *Id.* "Accordingly, the Illinois Supreme Court has only recognized the tort 'in two settings: where an employee is discharged for filing, or in anticipation of filing, a claim under the Workers' Compensation Act; or when an employee is discharged in retaliation for the reporting of illegal or improper conduct[.]'" *Mims*, 2022 WL 2316199, at *4 (quoting *Michael v. Precision Alliance Group*, LLC, 2014 IL 117376 ¶ 30)). The *Mims* court acknowledged that the Illinois courts' longstanding narrow application of common law retaliatory discharge counsels caution to federal courts in expanding the cause of action. *Id.* at *5. Although this Court believes that Mr. Alaska's case presents a much closer call than did *Mims*,[4] it is nevertheless inclined to agree with the *Mims* court's analysis. Additionally, Mr. Alaska appears to have not responded *at all* to R1's arguments concerning his ESLA retaliation claim. In the absence of any clear authority from the courts of Illinois establishing a cause of action for ELSA retaliation, or that

---

[4] The *Mims* plaintiff complained of being disciplined for taking sick leave to care for himself. 2022 WL 2316199, at *1. That differs from Mr. Alaska, who took leave to care for a loved one—which, as *DiPietro* recognized, is the core activity protected by the ESLA. 2020 IL App (1st) 192196 ¶ 43.

violation of the ESLA can constitute common law retaliatory discharge, the claim cannot move forward. The Court therefore dismisses Count IV of Mr. Alaska's amended complaint.

### III. Age Discrimination and Retaliation Claims

*A. Discrimination under the Age Discrimination in Employment Act and the Illinois Human Rights Act (Counts V and VII)*

Claims for age discrimination under the Age Discrimination in Employment Act and the Illinois Human Rights Act are both analyzed under the same set of principles common to most federal employment anti-discrimination actions. *See Lau v. Abbott Lab'ys*, 2019 IL App (2d) 180456, ¶ 38 (citing *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178 (1989). Under those principles, a plaintiff complaining of age discrimination must ultimately establish "that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). However, the bar to survive a motion to dismiss an employment discrimination claim is low. *Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207*, No. 13 C 1706, 2013 WL 6730885, at *7 (N.D. Ill. Dec. 20, 2013) (Holderman, J.) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). At this stage of the proceedings, "a complaint alleging age discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff because of her age." *Id.*

R1 argues that Mr. Alaska has not met even this low bar because of a failure to allege details about similarly situated younger employees treated differently than him. Def. Br. *11–12. While it is true that some of Mr. Alaska's allegations concerning younger similarly situated employees are threadbare, *see, e.g.,* Am. Compl ¶ 32, other allegations are sufficiently developed to state a plausible claim that age was a but-for cause of his alleged mistreatment. In particular, Mr. Alaska alleges that he and Mr. Taluy, the only member of his team older than Mr. Alaska, were both targeted for removal and were ultimately fired. *Id.* ¶ 29. That implies that the members of the IT Security team who were younger than Mr. Alaska and Mr. Taluy were not targeted for removal. It is also reasonable to infer

that Mr. Alaska (and Mr. Taluy) were similarly situated to the other members of their team. Thus, when drawing all reasonable inferences in Mr. Alaska's favor, the amended complaint plausibly alleges that Mr. Alaska suffered adverse employment actions that similarly situated younger employees did not. That is an allegation of discriminatory treatment sufficient to survive a motion to dismiss. *See Kirley*, 2013 WL 6730885, at *7.

Additionally, there is nothing in Mr. Alaska's amended complaint indicating a legitimate reason for his placement on a PIP and his termination. To the contrary, Mr. Alaska alleges that his performance at work was stellar. *See id.* ¶¶ 15–18. That differentiates Mr. Alaska's case from *Strong v. Quest Diagnostics Labs, Inc.*, cited by R1, where the plaintiff had a history of "prior disciplinary conduct." No. 19-cv-4519, 2021 WL 340373, at *7 (N.D. Ill. Feb. 2, 2021) (Tharp, J.). Mr. Alaska also alleges that Mr. Pineda and a vice president of R1 referred to Mr. Taluy as "useless" and "boring," which Mr. Alaska claims were "derogatory ageist comments." Pl. Resp *7. R1 argues that these are "terms that have no connection to age," and that they have no connection to Mr. Alaska, Def. Br. *12, but the Court disagrees. First, the statements about Mr. Taluy form a pattern with Mr. Pineda's question upon learning of Mr. Alaska's requested FMLA leave, "Why is Richard still here?" Am. Compl. ¶ 20. Second, the language in all three alleged statements conforms to common negative stereotypes about older workers. At this stage of the proceedings, such statements can plausibly evince "an ageist culture within R1's IT leadership and a pattern of discriminatory behavior against older employees." Am. Compl. ¶ 30; *see Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) ("[A] particular remark can provide an inference of discrimination when the remark was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action."); *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (plaintiffs may "prove discrimination in a holistic fashion" by presenting all direct and indirect evidence together "as a whole").

In sum, Mr. Alaska has plausibly alleged that he was placed on a PIP and ultimately terminated because of his age. The amended complaint indicates that R1 did not target similarly situated younger employees in this manner, but did target a similarly situated older co-worker. The amended complaint also provides no evidence of legitimate reasons for these employment actions, but does provide evidence of potentially widespread ageist attitudes among R1s leadership. Thus, looking at Mr. Alaska's allegations as a whole, the Court easily finds that he has adequately pleaded a claim for discrimination under the ADEA and IHRA.

        B.     *Retaliation under the Age Discrimination in Employment Act and the Illinois Human Rights Act (Counts VI and VIII)*

As with Mr. Alaska's claims of discrimination, claims of retaliation under the Age Discrimination in Employment Act and under the Illinois Human Rights Act are evaluated using nearly identical frameworks provided by broader federal employment anti-discrimination law. To prevail, Mr. Alaska will eventually need to show that he "engaged in statutorily protected activity, that he suffered a materially adverse action," and that the protected activity constituted a but-for cause of the adverse action. *Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011) (ADEA); *see Lau*, 2019 IL App (2d) 180456, ¶ 65 (IHRA). "Protected activity includes internal complaints to managers or other appropriate persons," so long as the complaint is "sufficient to put the employer on notice that the plaintiff reasonably believes that prohibited discrimination has occurred." *Lau*, 2019 IL App (2d) 180456, ¶ 67 (citing *Burks v. Wisconsin Department of Transportation*, 464 F.3d 744, 758 (7th Cir. 2006); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)).

Here, Mr. Alaska alleges that he was fired just two weeks after his attorney sent a letter to R1 complaining of discrimination under the ADEA and IHRA (as well as the FMLA and ESLA). Am Compl. ¶ 31; *see* Pl. Resp. ex. A-1. R1 initially argued that the letter sent by Mr. Alaska's attorney made no mention of any age-related discrimination and thus did not constitute protected activity. Def. Br

*14. R1 attached a copy of a short notice of attorney's lien that it claimed was "the only communication received by R1 from Plaintiff's attorney during his employment." *Id.* *14 n.4, ex. B. But this statement appears to have been a material misrepresentation. In his response brief, Mr. Alaska attached a copy of a very detailed letter, sent by his attorney to R1's general counsel on February 14, 2025, as well as a sworn affidavit from Mr. Alaska's attorney and delivery receipts confirming that R1's general counsel received the email. Pl. Resp. ex. A. Perhaps R1's litigation attorneys were unaware of this email, but R1 itself cannot reasonably claim ignorance. Of course, the Court understands that mistakes happen. What is truly remarkable, however, is that R1's reply brief does not contain any sort of apology for the misrepresentation, despite R1 and its attorneys' duty of candor to the court. Fed R. Civ. P. 11(b)(3); Ill. R. Prof. Conduct (2010) R. 3.3 Instead, R1 doubles down and asserts that the letter did not constitute protected activity "because [Mr. Alaska] has no basis in fact to support a reasonable or good faith belief that any action was taken against him *based on his age*." Def. Reply *7. The Court has already addressed why it disagrees with this contention. *See supra* section III.A.

R1 also attempts to argue that Mr. Alaska's claim of age-related discrimination and retaliation "fly in the face" of his claims of FMLA and ESLA retaliation. Def. Reply *7. But this flailing argument, without citation to any precedent, is rooted in logical error. The existence of one but-for cause does not preclude a second but-for cause. *Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n.3 (7th Cir. 2014) ("A single event can have multiple but-for causes[.]"). It is perfectly possible that, but for Mr. Alaska's engagement in protected leave-taking *and* but-for his internal complaint of age discrimination, he would not have been terminated. *Peaster v. McDonald's Corp.*, No. 22 CV 7037, 2023 WL 5387573, at *4 (N.D. Ill. Aug. 22, 2023) (Jenkins, J.); *cf. Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020) ("Often, events have multiple but-for causes."). Moreover, Mr. Alaska's complaint clearly identifies Counts V–VIII (describing misconduct under the ADEA and IHRA) as *alternatives* to Counts I–IV (describing misconduct under the FMLA and ESLA). There is nothing wrong or inconsistent about

bringing claims in the alternative; the practice is explicitly permitted by Federal Rule of Civil Procedure 8(d)(2). *See United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 584–85 (7th Cir. 2021) ("[A]lternative pleading is both permitted and routine."); *Hill v. Target Corp.*, No. 24 C 341, 2025 WL 919614, at *5 n.9 (N.D. Ill. Mar. 26, 2025) (Lefkow, J.) ("The but-for causation standard, however, is not necessarily inconsistent with pleading that an adverse employment action had two but-for causes, or that either of two factors was the only but-for cause, provided that the complaint properly pleads in the alternative." (internal quotations omitted)). R1's argument thus falls well short of the mark.

The fact of R1's material misrepresentation would be enough by itself to throw out R1's contention that Mr. Alaska has failed to state a claim in Counts VI and VIII. Fed. R. Civ. P 11(c)(4). However, the sufficiency of his claim is also clear from the face of Mr. Alaska's amended complaint, particularly when augmented by the letter attached to his response brief. The internal complaint sent by Mr. Alaska's attorney constituted protected activity, its close temporal proximity to his firing, the lack of any investigation into his complaint, and the other age-related discrimination that Mr. Alaska has adequately alleged, all easily support a plausible inference that he was terminated because he sent the complaint, in violation of the ADEA and IHRA.

## CONCLUSION

The Court grants in part and denies in part R1's motion to dismiss [11]. Count IV of the amended complaint is dismissed; all other Counts may proceed.

**IT IS SO ORDERED.**

Date: 3/11/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge